UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RONALD LEE LAWSON et al., | ) |
| | ) |
| | ) Civil No. 10-354-GFVT |
| Plaintiffs, | ) |
| | ) |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| WHITLEY COUNTY et al., | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises out of the death of Ronald Shannon Lawson while incarcerated in the Whitley County Detention Center. The Plaintiffs, Ronald Lee Lawson and Shawnda Lawson, suing individually, as executors, and as guardians, allege that the Defendants caused Lawson's death, and in so doing violated his civil rights. These alleged violations are the bases of the Plaintiffs'' current action which seeks damages under 42 U.S.C. § 1983 and state tort law. Defendants Health Professionals ("HPL") and Correctional Healthcare Companies ("CHC") responded by filing motions to dismiss [R. 24; R. 26] that make similar arguments. Despite the lack of a response from Plaintiffs, for the reasons stated below, those motions will be denied in large part while also being granted in one context.

**I.**

Because of the procedural posture of this case, the Court must consider all factual allegations contained in the First Amended Complaint [R. 18] as true. *DirecTV, Inc. v. Treesh*,

1

487 F.3d 471, 476 (6th Cir. 2007) (The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff"). In the Amended Complaint, Plaintiffs state that Lawson was incarcerated in the Whitley County Detention Center ("Jail") on July 24, 2010. [R. 18 at 8]. Lawson was a sufferer of diabetes, a fact known to Jail personnel at the time of Lawson's entry. In addition, Lawson's family provided insulin and syringes to the Jail so that Lawson could continue to receive treatment while incarcerated. [*Id.*].

After Lawson's entry to Jail, and for a three day period, his glucose levels were dangerously high. He complained to Jail personnel and requested medical care, care he did not receive. As a result, Lawson began suffering from diabetic seizures. During those seizures, Lawson would convulse and thrash around his cell, hitting various parts of his body against metal and concrete fixtures. Jail personnel responded by strapping him to a chair so he would not injure himself. Soon thereafter, Lawson became unresponsive. [R. 18 at ¶ 23].

Eventually, an untrained Jail employee attempted to administer insulin to Lawson. After this attempt at medical care failed, Jail staff contacted EMS who transferred Lawson to Jellico Community Hospital where he died. [R. 18 at 10]. The autopsy report revealed that Lawson, 26, had died from diabetes mellitus. [*Id.*]. Plaintiffs allege that the Defendants assumed the responsibility of attending to Lawson's medical needs while he was incarcerated, that Defendants' conduct amounted to reckless disregard and indifference to Lawson's life and civil rights, and that Defendants' conduct gives rise to causes of action under 42 U.S.C. § 1983 and state tort law. [*Id.* at 11-14].

With respect to HPL and CHC specifically, Plaintiffs allege that they employed the individuals working at the jail who failed to provide adequate medical coverage, and that those

2

individuals' actions were a result of inadequate company training policies. [R. 18 at 6-7, 12]. The specific rights violated by HPL and CHC, according to Plaintiffs, include Lawson's Eighth and Fourteenth Amendment rights. [*Id*. at 12]. The Plaintiffs allege that HPL and CHC are directly and vicariously liable under both 42 U.S.C. § 1983 and Kentucky tort law.

## II.

HPL and CHC argue, pursuant to Federal Rule of Civil Procedure 12(b)(6), that each of the theories for relief contained in the First Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed. [R. 24; R. 26]. This is only partially true.

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility" then, is the benchmark the factual allegations contained in Plaintiffs' First

Amended Complaint must meet in order to defeat HPL and CHC's motions to dismiss.

### III.

#### A.

Both HPL and CHC moved to dismiss any § 1983 claims against them based on vicarious liability. [R. 24 at 6; R. 26 at 10]. While neither HPL nor CHC are technically an arm or branch of Kentucky's government, they had a close contractual relationship with Whitley County whereby they were required to provide healthcare and oversight to the county at its Jail. As a result, they are subject to § 1983 liability for conduct arising out of that contract. *See Wilder v. Hall*, 501 F.Supp. 2d 887, 893-94 (E.D. Ky 2007) (Cooperation or concerted action between state and private actors will subject the private actor to liability under 42 U.S.C. § 1983). Thus, HPL and CHC are treated as if they are state actors for purposes of § 1983 analysis.

In the vicarious liability context, HPL and CHC's status benefits them. The law is clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). Therefore, dismissal of any claims against HPL or CHC based on vicarious liability under § 1983 are properly dismissed.

#### B.

As for the remainder of the claims, dismissal would be inappropriate at this time. HPL and CHC both acknowledge in their motions that this Court "must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiffs' favor." [R. 24 at 4; R. 26 at 4]. Despite this, a large portion of HPL and CHC's motions relies on bare factual assertions that they would like the Court to construe in *their* favor. For example, HPL makes

4

this unsupported claim: "this Defendant does not employ nurses or jail staff at the Whitley County Detention Facility and therefore, are not responsible for their training." [R. 24 at 7]. Thus, HPL argues, they cannot be held liable for a deficient policy in the training of said personnel. CHC makes a similar claim: "[t]his Defendant is merely the parent corporation of co-Defendant [HPL] who is the actual entity who contracted to provide services to Whitley County . . . ." [R. 26 at 6]. Because CHC did not have a contractual relationship with Whitley County, only its subsidiary did, CHC argues that they are not subject to liability. [*Id*.].

Both of these assertions are in direct conflict with the facts as alleged by the Plaintiffs. In their First Amended Complaint, Plaintiffs claim that Co-Defendant Verna Halcomb was employed by both HPL and CHC[1], and that while working she "participated in the mistreatment and negligent care of Mr. Lawson." [R. 18 at 5-6]. Similarly, Plaintiffs also contend that both HPL and CHC "entered into a contract/agreement to provide [medical] services to Whitley County, Kentucky, by and through the Whitley County Detention Center." [R. 18 at 7]. The Court is now faced with a situation where a complaint makes certain allegations, unsupported by any evidence, that are in direct contravention with allegations made in motions to dismiss that are also unsupported by any evidence. Unfortunately for CHC and HPL, the law provides clear guidance as to which claims should be given credence at this stage: the Plaintiffs. *Supra* Part II. Therefore and despite HPL and CHC's claims to the contrary, the facts at this stage must exist as Plaintiffs allege: both HPL and CHC contracted with Whitley County to provide medical services to the Jail and both employed Halcomb and others that were in charge of providing that

---

[1] It is certainly possible for Halcomb, or any other Co-Defendant to have been simultaneously employed by HPL and CHC. "[A] person may be servant of two masters . . . at one time as to one act, if the service to one does not involve the abandonment of the service to the other." *City of Somerset v. Hart*, 549 S.W.2d 814, 817 (Ky. 1977).

service during the time that Lawson was incarcerated. If HPL and CHC's claims to the contrary are accurate, there will be a time when they will have an opportunity to prove them as such and have the case dismissed. Now is not that time.

## C.

HPL and CHC's other arguments essentially seek to establish that Plaintiffs' claims, as pled, do not meet the "plausibility" benchmark. With respect to the § 1983 claims, Plaintiffs allege that HPL and CHC (as well as other defendants) maintained a custom or policy that resulted in deficient training on how to deal with medical crises and that this deficiency led to the deprivation of Lawson's life and civil rights. [R. 18 at ¶¶ 13, 38]. HPL and CHC allege that Plaintiffs' complaint is deficient because "Plaintiffs fail to even allege *what* policies, procedures, or customs are flawed, let alone *how* such procedures caused the alleged injury." [R. 26 at 9; R. 24 at 8].

In order to prevail on a failure to train claim, "the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that [personnel] must perform; that the inadequacy is the result of the [defendants'] deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). When determining whether Plaintiffs' claims meet each of the three requirements, the Court is permitted to make all reasonable inferences from the factual allegations contained in the complaint. *See Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 630 (6th Cir. 2009).

First, when determining whether it is plausible that the training program is inadequate: Plaintiffs allege that Lawson died while under the medical supervision of Defendants. While this fact alone does not indicate that the training program for personnel was inadequate, the

surrounding allegations that Lawson died from a denial of treatment for diabetes after three days of asking for that exact type of treatment and then manifesting rather alarming symptoms does indicate that Defendant personnel were inadequately trained.

The second requirement, deliberate indifference, is met if there is a "failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). For example, this requirement is satisfied "if a municipality fail[s] to instruct its officers in the use of deadly force." *Id*. (citing *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). In this case, it is quite obvious that failing to train medical personnel how to deal with medical emergencies relating to diabetes could foreseeably lead to terrible consequences, including death.

Third, there must be a causal connection between the inadequacy and the injury. *See Russo*, 953 F.2d at 1046. Here, the connection is straightforward, at least as alleged by Plaintiffs. But for the inadequate medical training, Lawson would not have died or suffered other deprivations. Instead, he would have been provided adequate treatment. The third prong is certainly satisfied. Thus, all three requirements of a failure to train claim are set out in the First Amended Complaint to a satisfactory "plausible" level in the Amended Complaint and it would be inappropriate to dismiss such a claim at this time.

### D.

The same is true of Plaintiffs' state law claims of negligence, outrage, and intentional infliction of emotional distress. HPL and CHC's argument that these claims should be dismissed is entirely based on an alleged lack of specificity in pleading. [R. 24 at 8-10; R. 26 at 7-11]. In the First Amended Complaint's "Causes of Action" section, each Count incorporates the earlier alleged facts [R. 18 at 11-13], facts that have also been outlined above. *See supra* Part I. There

is no specificity requirement in pleading other than a requirement that the facts as outlined are sufficient for the Court to conclude that each tort is "plausible." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Having already outlined the facts as alleged, the Court is convinced that each tort claim is indeed plausible, and CHC and HPL's challenge based on specificity grounds must be denied.

It is true, however, that in Kentucky, the torts of intentional infliction of emotional distress and outrage are actually the same tort. *See Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 49 (Ky. 2008). As a result, and in order to avoid redundancy, it is now appropriate to dismiss the outrage claim.

## IV.

Accordingly, the Court hereby **ORDERS**:

1. HPL and CHC's motions to dismiss [R. 23; R. 25] are **GRANTED in part** with respect to any claims based on 42 U.S.C. § 1983 seeking relief on a theory of *respondeat superior*;

2. HPL and CHC's motions to dismiss [R. 23; R. 25] are **GRANTED in part** insofar as the outrage claim against them is dismissed in order to avoid redundancy; and

3. HPL and CHC's motions to dismiss [R. 23; R. 25] are **DENIED in part** with respect to all remaining claims.

This, the 31st day of January, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

9